UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY MAO, | Case No. 1:20-cv-00006-HBK |
| Plaintiff, | OPINION AND ORDER TO REMAND CASE TO COMMISSIONER[2] |
| v. | (Doc. No. 17) |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

Danny Mao ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 17, 19, 21). For the reasons stated, the Court orders this matter REMANDED for further administrative proceedings.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 25).

## I. JURISDICTION

Plaintiff filed for supplemental security income on September 28, 2016, alleging an onset date of May 19, 2015. (AR 240-48). Benefits were denied initially (AR 202-05), and upon reconsideration (AR 211-16). Plaintiff appeared before Administrative Law Judge David LaBarre ("ALJ") on December 18, 2018. (AR 123-46). Plaintiff was represented by counsel and testified at the hearing. (*Id.*). On January 29, 2019, the ALJ issued an unfavorable decision (AR 18-40), and on October 29, 2019, the Appeals Council denied review (AR 7-12). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 28 years old at the time of the hearing. (*See* AR 263). He graduated from high school and was in special education classes "all through school." (AR 130-31). He lives with his father, mother, sister, and brother. (AR 137). Plaintiff has no work history. (AR 129). Plaintiff testified that he has two to three seizures every day. (AR 131-32). He reported that he has two "big seizures" every week, and two "small" seizures every day. (AR 132-34). Plaintiff testified that he is tired after a seizure and has to lay down for two hours. (AR 133). He gets "depressed" and isolates because of his seizures, gets mad once a month and "can't control it." (AR 139).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of

impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*,

180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 28, 2016, the application date. (AR 23). At step two, the ALJ found that Plaintiff has the following severe impairments: unspecified anxiety disorder; mild neurocognitive disorder; intellectual disability; and myoclonic epilepsy. (AR 23). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 24). The ALJ then found that Plaintiff has the RFC:

> to perform less than a full range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant can lift and carry 20 pounds frequently and 10 pounds occasionally; sit for six hours in an eight-hour workday with normal breaks; stand and walk for six hours in an eight-hour workday with normal breaks; is limited to simple one to two step tasks; must avoid heights and dangerous machinery; would require an unscheduled absence once a month; and would be off-task less than 10 percent of an eight-hour workday.

(AR 27). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 34). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: housekeeper, assembler (of small parts), and agricultural sorter. (AR 34-35). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since September 28, 2016, the date the application was filed. (AR 36).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's subjective complaints;

2. Whether the ALJ erred in assessing the RFC by improperly considering the medical opinion evidence; and

3. Whether the ALJ erred at step three.

(Doc. No. 17 at 17-34).

### VII. DISCUSSION

#### A. Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the

intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (AR 28). First, the ALJ found that, "as alluded to" in another part of the decision, Plaintiff's "examination findings, reports of symptoms, reports of limitations, and the type of treatment he received do not fully support the degree of limitations he alleges in [the] proceedings." (AR 29). Presumably, the ALJ is "alluding to" his general findings elsewhere in the decision that discounted Plaintiff's symptom claims because (1) "despite numerous physical and mental symptoms, [Plaintiff's] treatment primarily consisted of medications and outpatient treatment"; (2) "the medical evidence of record does not reveal a significant increase in his symptoms during the relevant period"; (3) Plaintiff's "symptoms have been relatively stable and controlled with the prescribed treatment regimen"; and (4) the "lack of more aggressive treatment during the relevant period, including hospitalizations, suggest [Plaintiff's] symptoms and limitations were not as severe as alleged." (AR 29-30). It is reasonable for the ALJ to consider the type and effectiveness of treatment as part of the evaluation of Plaintiff's symptom claims. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount Plaintiff's testimony regarding the severity of an impairment); *See Tommasetti*, 533 F.3d at 1039-40 (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment").

However, as noted by Plaintiff, "the ALJ failed to identify which portions of Mr. Mao's symptomology testimony the ALJ believed were inconsistent with which portions of the medical record, rather[,] the ALJ provided a summary of the entirety of the medical record." (Doc. No. 17 at 30). The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But in considering Plaintiff's symptom claims, the ALJ must specifically identify the statements he finds not to be credible, and the evidence that allegedly undermines those statements. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "To ensure that our review of the ALJ's credibility determination is

meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record; rather, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."). Here, as pointed out by Plaintiff, "a general citation to [the entire medical record] that is only later addressed in the ALJ's summary of medical evidence does not constitute [clear and convincing] reasons required to reject symptomology evidence, especially given the fact that the ALJ completely fails to explain how treatment with increasing doses sedating anti-seizure medications [and] discussions of possible surgery and constant doctor visits [] would not support a disabling and/or worsening level of symptomology testimony." (Doc. No. 17 at 30). Moreover, contrary to the ALJ's general findings, Plaintiff's condition was rarely noted to be "stable"; rather, the longitudinal record includes consistent notations that Plaintiff had "complex partial epilepsy with generalization and with intractable epilepsy" that was not well controlled and consistently managed by increasing anti-seizure medication. (*See* AR 395 (added additional anti-seizure medication), 407, 422 (add additional anti-convulsive medication), 452 (seizures "not controlled"), 457 (seizures "not well controlled"), 463 (seizures "not controlled"), 467 (seizures "not controlled" and medication increased), 506 (seizures "severe not controlled"), 592 (anti-seizure medication increased). Based on the foregoing, the Court finds that the ALJ's general reasoning that Plaintiff's symptom claims were not supported by the conservative nature and effectiveness of treatment, without identification or explanation as to how the medical evidence undermined his testimony, was not a clear and convincing reason, supported by substantial evidence, to reject his symptom claims.

Second, the ALJ found "some of [Plaintiff's] statements regarding the limiting effects of his physical impairments are not entirely consistent with his activities of daily living." (AR 29). The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the

8

day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a).  To support this finding, the ALJ cites the September 2018 examining report of Dr. Robert Wagner that notes Plaintiff cooks, cleans, shops, walks for exercise, and "perform[s] his own activities of daily living without assistance"; and the September 2018 examining report of Dr. Megan Stafford indicating that Plaintiff reported "being able to adequately handle some responsibilities of daily living including hygiene, grooming, and limited household duties."  (AR 29, 520, 532).  Plaintiff argues this finding was "harmfully and erroneously 'cherry picking' and 'mischaracterizing' evidence of [Plaintiff's] daily activities completely out of context, despite the overwhelming evidence of record [] in testimony and medical records regarding [Plaintiff's] inability to function independently regarding his basic activities."  (Doc. No. 17 at 31-33).  The Court agrees.

      As Plaintiff notes, the ALJ failed to consider Dr. Stafford's additional findings in 2018 that Plaintiff needs assistance keeping appointments, does not use the stove for safety reasons, has broken dishes when putting them away due to seizures, does not drive or use public transportation, and picks out his own clothes but sometimes puts them on inside out.  (Doc. No. 17 at 33 (citing AR 532)).  Moreover, evidence across the longitudinal record supports Plaintiff's testimony that he is unable to complete daily activities without assistance due to seizures.  (AR 347 ("father is interested in help in the home to ensure [Plaintiff] does not hurt himself"), 369 (reporting unable to do chores because of seizures), 437 (unable to cook or drive because of seizures), 459 (unable to cook because "he may have seizure and fall on stove or on knives"), 503 (unable to cook because he may have seizure and burn himself), 513 (referred to counseling program by treating provider due to "perceived inability to care for himself independently due to

his lack of independent living skills"), 652 (treating physician indicated Plaintiff "needs family support for daily activities). Thus, the ALJ's wholesale rejection of Plaintiff's symptom claims because they were not consistent with a single report that Plaintiff could perform basic activities of daily living without support was not clear, convincing, and supported by substantial evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883–84 (9th Cir. 2006) ("single discrepancy fails to justify the wholesale dismissal of Plaintiff's testimony.").

Third, the ALJ found that Plaintiff "was observed throughout the hearing and did not demonstrate or manifest significant difficulty concentrating during the hearing. During the time when [Plaintiff] was being questioned, he appeared to process the questions without significant difficulty, and was able to respond to most questions appropriately and without significant delay. As such, [Plaintiff's] presentation and demeanor during the relevant period were not entirely consistent with the alleged severity of his alleged mental symptoms." (AR 29). Plaintiff argues the "ALJ erroneously and harmfully applied the 'sit and squirm' method of deciding the authenticity of [Plaintiff's] symptomology." (Doc. No. 17 at 33). Plaintiff is correct that an ALJ's reliance on personal observations of a claimant at the hearing "has been condemned as 'sit and squirm' jurisprudence." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). However, standing alone, the "inclusion of the ALJ's personal observations does not render the decision improper." *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)). Here, despite the ALJ's assertions that Plaintiff was able to respond to questions appropriately, as noted by Plaintiff, the hearing transcript includes multiple assertions at the beginning of the hearing that Plaintiff "didn't understand" or only understood "a little." (Doc. No. 17 at 34 (citing AR 128)). Moreover, the Court notes that this reasoning only relates to Plaintiff's mental symptom claims and is not a clear and convincing reason to discount Plaintiff's claims of ongoing seizures.

Finally, the ALJ found Plaintiff's "allegations pertaining to his physical limitations and restriction caused by his impairments are not fully corroborated by the objective medical evidence." (AR 29). The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). In

support of this finding, the ALJ noted that Plaintiff's treatment consisted of medications and outpatient visits, he did not seek emergency treatment for his seizures, examination findings by one consultative examiner were largely unremarkable, and a 2015 MRI scan of Plaintiff's brain "revealed cysts/polyps/lesions" but there was no acute intracranial hemorrhage, no acute cerebral infarction, no evidence for mesiotemporal sclerosis, and no advanced cerebral atrophy or hydrocephalus. (AR 30, 496-97, 519-23). In addition, as to his mental health symptoms, the ALJ noted that the examining psychologist noted Plaintiff's thought process was grossly logical, organized, and coherent; and he was able to remember three out of three items immediately and within three minutes. (AR 29, 532-33).

Defendant argues that Plaintiff "does not point to objective findings compelling a different finding." (Doc. No. 19 at 19). However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective testing and physical examinations, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed in detail above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were legally insufficient or did not address Plaintiff's primary claimed impairment of seizures. Thus, because lack of corroboration by objective evidence cannot stand alone as a basis for a rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. Medical Opinions**

In his opening brief, Plaintiff contends that the "RFC does not reflect substantial evidence of record." (Doc. No. 17 at 22). However, his argument is almost entirely premised on whether the ALJ properly considered the medical opinion evidence. (Doc. No. 17 at 22-29). There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who

11

examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan*, 246 F.3d at 1201–02 (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id*.  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. (citing *Lester*, 81 F.3d at 830-31).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

First, Plaintiff generally argues that the "ALJ's deference to the opinions of the non-examining state agency reviewer over long-term treating specialist physician[s] was harmful error." (Doc. No. 17 at 22-23).  While Plaintiff is correct that an ALJ generally may give more weight to treating providers than non-examining providers, a nonexamining opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *See Thomas*, 278 F.3d at 957; *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007).  However, where the treating providers' opinions are contradicted by medical evidence, the opinions still may be rejected if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record.  *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995).  Thus, the salient question before the Court is whether the ALJ offered the requisite reasons to reject the treating opinions.

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting the treating opinions of Dr. Rohini J. Joshi and Dr. Angela Grasser.  (Doc. No. 17 at 24-27).  In February 2017, Dr. Grasser opined that due to "severe seizures" Plaintiff would be absent from

work due to physical/mental symptoms 5 days or more per month; would be "off-task" 20% of the day; would need to lie down and/or recline for about 2 hours in an 8-hour workday; could sit for about 2 hours in an 8-hour workday; and could stand and walk for about 4 hours in an 8-hour workday. (AR 437-40). In September 2018, Dr. Grasser opined that Plaintiff would be absent from work due to symptoms 5 days or more per month; would be "off-task" 10% or less of the day; would need to lie down and/or recline for about 3 hours in an 8-hour workday; could sit about 5 hours in an 8-hour workday; and could stand and walk for about 4 hours in an 8-hour workday. (AR 577-80). The ALJ noted Dr. Grasser's treating relationship with Plaintiff but gave little weight to her opinions because "these limitations as a whole are overly restrictive in light of the relatively stable documented symptoms, [Plaintiff's] ability to perform various activities of daily living, and the routine and conservative nature of his medical treatment." (AR 31).

In November 2018, Dr. Joshi opined that Plaintiff could sit, stand, and walk for less than 2 hours in an 8-hour workday; rarely lift 10 pounds; would need to take unscheduled breaks during an 8-hour workday; and was likely to be absent about 3 days per month as a result of his impairments. (AR 651-54). The ALJ again noted Dr. Joshi's treating relationship with Plaintiff but gave little weight to Dr. Joshi's opinion "for similar reasons" as those given to reject Dr. Grasser's opinion, namely, the "opined limitations are overly restrictive in light of the objective evidence and [Plaintiff's] capability of performing activities of daily living." (AR 31).

The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495 F.3d at 631; *see also Batson*, 359 F.3d at 1195 (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). In addition, an ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999). Plaintiff correctly notes that when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for

the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. Here, the ALJ fails to state with requisite specificity how a single report of Plaintiff's ability to do basic daily activities, and the treatment record, which largely consists of Plaintiff's treatment visits with Dr. Grasser and Dr. Joshi, are inconsistent with their opined limitations. Thus, these were not specific and legitimate reasons, supported by substantial evidence, for the ALJ to reject the treating opinions of Dr. Grasser and Dr. Joshi. Particularly in light of the need to reconsider Plaintiff's treatment claims, as discussed above, the ALJ must reconsider the medical opinion evidence and reassess Plaintiff's RFC on remand.[3]

**C. Step Three**

Plaintiff additionally argues that the ALJ erred at step three by determining that Plaintiff's seizure disorder does not meet or equal Listing 11.02, and his borderline intellectual functioning does not meet or equal Listing 12.05. (Doc. No. 17 at 17-22). Because the analysis of step three is at least in part dependent on the ALJ's reevaluation of Plaintiff's symptom claims and the reassessment of the medical opinion evidence, the Court declines to address these challenges in detail here. The reconsideration of Plaintiff's symptom claims and the medical opinion evidence is particularly relevant in this case as the Listing at 11.02 is based, in large part, on the type and number of seizures experienced by Plaintiff in a certain time period. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.02. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and the medical opinion evidence, conduct a new sequential analysis considering all of the

---

[3] Plaintiff additionally argues that the ALJ's finding that the record supports Plaintiff "being off task less than 10 percent and requiring an absence of one day a month due to his seizures" is not "based on any treating or examining physician opinion"; and despite giving the Dr. Megan Stafford's opinion great weight, the RFC does not reflect limitations opined in her consultative examining opinion. (Doc. No. 17 at 27-28; AR 31, 535). In light of the need to remand to reconsider the treating opinion evidence, the Court declines to consider these arguments. On remand, the ALJ must reconsider all of the medical opinion evidence.

evidence in the record, including a reevaluation of step three.

**D. Remedy**

Plaintiff contends that the Court should remand for a payment of benefits, or in the alternative, the Court should remand for further proceedings. (Doc. No. 17 at 34). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds in this case that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims and the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ should reevaluate Plaintiff's symptom claims. The ALJ should also reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary,

the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts.  Finally, the ALJ should reconsider steps the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
2. An application for attorney fees may be filed by separate motion.
3. The Clerk shall terminate any motions and deadlines and close this case.

Dated:     March 4, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE